THE SAVANNAH STREET RAILROAD *v.* JACKSON.

Whether the proper procedure in suing out the *certiorari* from the city to the superior court was observed or not, there was no error in dismissing the *certiorari.* The only complaint being that the verdict was contrary to law, the evidence and the charge of the court, and was excessive, and there being, in addition to the presumption raised by law against the company, evidence in the plaintiff's favor from which the jury could properly infer negligence on the part of the defendant, and the latter having introduced no evidence, and consequently having failed to rebut the plaintiff's *prima facie* case, or in any manner show the exercise of due diligence, and it not appearing that the verdict was excessive, this court will not reverse the action of the judge of the superior court declining to set the verdict aside.

February 5, 1895.

*Certiorari.* Before Judge FALLIGANT. Chatham superior court. June term, 1894.

Jackson sued in the city court of Savannah for damages resulting from the striking of a wagon he was driving, by a trolley car of the defendant. On the first trial the plaintiff obtained a verdict for $800; a new trial was granted, and he obtained a verdict for $1,000. Defendant carried the case to the superior court by writ of *certiorari*, alleging that the verdict was contrary to law and evidence, and was excessive. The *certiorari* was dismissed, and the verdict and judgment of the city court sustained.

The evidence shows, in brief, the following: Plaintiff

was driver of a wagon belonging the Savannah Steam Laundry, in which employment he had been for six or eight years. He had driven a wagon drawn by two horses to a house on the west side of East Broad street, about ten or fifteen feet south of Taylor street, in that city. East Broad street runs north and south, and has upon it two parallel car tracks. The wagon and horses were facing towards the south, and plaintiff, having obtained a bundle for which he had gone, re-entered the wagon and turned the horses round to go in a north-easterly direction. Before so turning, and as he stepped in the wagon, he saw the approaching car coming north-ward on the east track at a point just south of Gordon street, which seems to be the next street south of Taylor, crossing East Broad, the distance between the two not appearing. The horses walked diagonally across East Broad street and had cleared the east track, but before the wagon had got across it, the car, which seems to have been approaching faster than plaintiff supposed, struck the wagon, knocking plaintiff out and killing one of the horses. He testified that the only bell he heard rung from the car was one sounded immediately before the wagon was struck. He heard one bell, and the shock was right on it. The motorman of the car could have seen that he was going to cross the track. When he heard the bell he struck the horses with his whip, and they leaped; they cleared the track but the wagon did not. His face was then sidewise to the car. He could have prevented the injury if the sounding of the gong had been further back. He judged that the gong was sounded when the car was from two to five feet from the wagon. When he saw the car a little south of Gordon street, he did not think it was coming rapidly; could not say at what rate of speed it was coming. Any man would have crossed the track as he did, considering the distance the car was, provided it

was not running at a rapid rate, because he would have crossed with ease without the slightest danger; that is his opinion. The soil was sandy. His object in crossing was, that he could not turn without throwing his horses on the west track. He had crossed that track; he had to cross it to turn.—From the testimony of two other witnesses it appears that the car was going down grade at the rate of about ten or twelve miles an hour, and that the only time it gave any warning or signal of its approach before it struck Jackson was when it was about twelve or fifteen feet from him. The cars usually run quite rapidly down that grade. By city ordinance it was not lawful for them to run faster than ten miles an hour. After striking the wagon the car went on to Charlton street before it stopped. Neither the conductor nor the motorman came back to Jackson's assistance. No testimony was introduced by the defendant, and that for the plaintiff was contradictory in several respects. It further appeared that plaintiff was in all probability internally and permanently injured, although, after being confined to his bed for three or four months, he returned to his work and resumed his duties, receiving the same pay therefor as before. He suffered pain all the time he was laid up, sometimes slightly, sometimes intensely; and still suffers. The fall and shock produced internal injuries. He has hemorrhages, and his digestion and hearing have been impaired thereby.

LAWTON & CUNNINGHAM, for plaintiff in error.

SEABROOK & MORGAN and GIGNILLIAT & STUBBS, *contra.*

LUMPKIN, Justice.

Jackson recovered a verdict against the Savannah Street Railroad, an incorporated company, in the city court of Savannah. The defendant carried the case to the superior court by *certiorari*, alleging in its petition that the verdict was contrary to law and the evidence,

and to the charge of the court, and was excessive. The *certiorari* was dismissed, and the judgment of the city court sustained.

Quite an interesting question was presented and argued in this court, as to whether or not the proper procedure was observed in suing out the *certiorari* from the city to the superior court. It was insisted for the defendant in error that the judgment of the superior court dismissing the *certiorari* was right, because the case was not legally carried to that court, and consequently the merits of it could not there be considered and passed upon. We find, however, upon an examination of the record, that it is unnecessary to decide the question thus made. Granting, for the sake of the argument, that the case was regularly before the superior court, the judgment rendered was the proper one, even upon the assumption that the judge of that court undertook to pass on the merits of the case. An inspection of the evidence will show that the plaintiff made out at least a *prima facie* case against the company. This was sufficient to entitle him to a verdict, in the absence of any rebutting testimony in behalf of the defendant; and as the latter introduced no evidence at all, the plaintiff's right to recover stood legally demonstrated. The amount of the verdict, in view of all the facts, was reasonable, and therefore the complaint that it was excessive is without merit.

We cannot know positively from the record whether the judgment of the superior court dismissing the *certiorari* and affirming the judgment of the city court was based upon the ground that the case was improperly brought up, or upon the ground that the verdict in the plaintiff's favor was right upon the facts; but this is immaterial, because, in any view of the case, no good reason for disturbing the judgment of the city court was shown.  *Judgment affirmed.*